# In the United States Court of Federal Claims

No. 14-738L
(Filed: April 28, 2017)
NOT FOR PUBLICATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| 3B'S LAND & GRAVEL, | |
| *Plaintiff,* | Res Judicata; Statute of Limitations; Judicial Estoppel |
| v. | |
| THE UNITED STATES, | |
| *Defendant.* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*William L. Ghiorso*, Salem, OR, for plaintiff.

*Edward C. Thomas*, Environment & Natural Resources Division, Natural Resources Section, Department of Justice, Washington, DC, for defendant, with whom was *John C. Cruden*, Assistant Attorney General. *Hala Teeny*, Bonneville Power Administration, Office of General Counsel, of counsel.

———————

OPINION

———————

BRUGGINK, *Judge*.

Plaintiff, 3B's Land & Gravel, LLC ("3B's") is a rock-quarrying company operating in the state of Washington that, in December 2005, purchased a 110-acre plot of land known as "Mt. Solo." From 1942 to 1976, the United States, through the Bonneville Power Administration ("BPA"), acquired multiple easements to accommodate the passage of ten high-voltage power lines across the property. Plaintiff filed its complaint on August 14,

2014, alleging that BPA effected a Fifth Amendment taking of its property due to various actions that prevented 3B's from making commercial use of its property.

Pending is defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims. Defendant argues that BPA's actions were taken in its proprietary capacity and thus could not give rise to a compensable Fifth Amendment taking. It also argues that plaintiff's claims are barred by the doctrines of res judicata and judicial estoppel due to 3B's involvement in prior litigation. Defendant also argues that some claims are barred by the statute of limitations. The motion is fully briefed, and we held oral argument on March 14, 2017. Because we find that plaintiff's claims are barred by the doctrine of res judicata, we grant defendant's motion to dismiss.

BACKGROUND

An agency of the Department of Energy, BPA is a self-funded federal power administration based in the pacific northwest. It markets federally-generated power and operates a system of high-voltage electric transmission lines across its territory. More than 40 years ago, BPA purchased a number of easements for the purpose of accommodating ten high-voltage power lines and the 17 towers needed to support them across what is now plaintiff's property on Mt. Solo. BPA's easements cover 65 of the 110 acres on Mt. Solo—or, roughly 60% of plaintiff's property.

Plaintiff purchased Mt. Solo, subject to the easements, in December of 2005. According to the easement summaries in plaintiff's complaint, many explicitly contemplated that the grantor would engage in mining activity.[1] In 2006, roughly eight years before filing its complaint, plaintiff made substantial investments and obtained all of the necessary permits in order to begin commercial mining activity on Mt. Solo. One hour after breaking ground, the Mine Safety and Health Administration ("MSHA") issued a stop-work order based on BPA's concern about the impact on one of its high voltage towers. 17 days later, BPA completed improvements to its tower, and MHSA

---

[1] One easement, however, provides that "there shall be no blasting or removal of rock from open quarry without the prior approval of the USA, which approval shall not be unreasonably withheld." Compl. ¶ 7.

2

withdrew the stop-work order. Also in 2006, BPA installed locks on the gates that provide access to Mt. Solo, leaving plaintiff, according to the complaint, without access to the property for a period of time.

In September of 2010, BPA recorded a notice of encroachment, alleging that plaintiff changed the grade of its right of way and destabilized the footings of some of BPA's electrical towers, violating the terms of BPA's easements. The notice required that 3B's "stop and desist [any activity within the easements] until such time as [3B's] submits a plan acceptable to BPA that will restore the slope stability, access roads," and follow certain conditions outlined in the notice of encroachment. Def.'s Ex. 5.[2] Plaintiff alleges that BPA's recording of a notice of encroachment brought it to financial ruin, ultimately causing 3B's to file a petition for chapter 11 bankruptcy in January 2012. In relevant part, plaintiff's chapter 11 reorganization plan contemplated mining on the Mt. Solo property and selling rock. In the bankruptcy proceeding, BPA filed "[the] United States' Response to Debtor's Motions to Lease Rock Quarry and to Sell Free and Clear," specifically opposing "mining and blasting activities at Mt. Solo that interfere, compromise or otherwise impair BPA's ability to reliably deliver power to its customers and provide benefits to the region." *3B's Land & Gravel, LLC*, No. 12-40392-PBS (W.D. Wash. Bankr. June 15, 2012), ECF. No. 51; Def.'s Ex. 6. Plaintiff's bankruptcy plan was approved on March 25, 2013. *See 3B's Land & Gravel, LLC*, No. 12-40392-PBS (W.D. Wash. Bankr. Mar. 25, 2013) (Order Confirming Plan), ECF No. 127.

Plaintiff filed its complaint here on August 14, 2014. Plaintiff had previously filed an action in September of 2012 that included nearly identical claims in the District Court of Oregon, later transferred to the Western District

---

[2] We note that a copy of the notice of encroachment was not included with plaintiff's complaint. In deciding a motion to dismiss under RCFC 12(b)(6), we generally only consider the allegations in the complaint, but "we may also look to 'matters incorporated by reference or integral to the claim . . . .'" *A&D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1147 (Fed. Cir. 2014) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)). Given that the notice of encroachment has an integral role in plaintiff's claim, we are satisfied that the copy of it, attached to defendant's motion to dismiss, is properly before us.

of Washington, alleging that BPA's actions effected a permanent and a temporary taking of its property. It also asserted a quiet title petition. Notably, these causes of action were not included in plaintiff's bankruptcy schedules until August of 2014, nearly a year and a half after the bankruptcy plan was finalized.[3] By that time, the Western District of Washington had dismissed plaintiff's action on the basis of judicial estoppel due to plaintiff's failure to include the contingent claims in its bankruptcy schedules. *See 3B's Land & Gravel, LLC v. United States*, No. 3:13-cv-06009 (W.D. Wash. June 4, 2014) (Order Granting Def.'s Mot. to Dismiss), ECF No. 44; Def.'s Ex. 2.

## DISCUSSION

The complaint here takes issue with three actions of BPA: 1) the installation of locks in 2006; 2) the recording of a notice of encroachment in September of 2010; and 3) BPA's opposition to mining activities on Mt. Solo during plaintiff's bankruptcy proceeding. Plaintiff alleges that these actions effected a Fifth Amendment taking of its property at Mt. Solo. In its motion to dismiss, defendant makes four independent challenges to the viability of the complaint. We deal primarily with its assertion of res judicata because defendant is correct, and that defense makes dealing with the others in any detail unnecessary.

Under the doctrine of res judicata, a final judgment on the merits will prevent the same parties from relitigating a claim that was raised in an earlier proceeding. Plaintiff's claims will be barred if we find that "(1) there is identity of parties . . . ; (2) there has been an earlier final judgment on the merits of a claim; and (3) the second claim is based on the same set of transactional facts as the first." *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1362 (Fed. Cir. 2000). Here, plaintiff only challenges whether there was a final judgment on the merits in the district court proceeding. Plaintiff argues that the district court never reached the merits of its takings claims and that the district court did not have jurisdiction over its takings claim.

---

[3] Plaintiff amended its bankruptcy schedules on August 20, 2014, six days after filing suit in this court, to include a claim against BPA for quiet title, slander of title, declaratory relief, and inverse condemnation. *See 3B's Land & Gravel,* (W.D. Wash. Bankr. Aug. 20, 2014) (Notice of Am. Schedule), ECF No. 164; Pl.'s Ex. 5.

We hold that the district court's dismissal of 3B's prior action functioned as a final judgment on the merits and that plaintiff's claims are thus barred by operation of the principle of res judicata. Because both actions involved the same parties and transactional facts, the first and third elements listed above are easily met. In fact, much of plaintiff's complaint in this court is taken word-for-word from its earlier district court complaint. In the prior action, indeed, plaintiff requested that the district court transfer its takings claims to this court.  Rather than transfer the claims, the district court dismissed plaintiff's complaint in its entirety on the basis of judicial estoppel, not for lack of jurisdiction.[4] *3B's Land & Gravel,* (W.D. Wash. June 4, 2014); Def.'s Ex. 2.  Plaintiff's prior complaint included all the claims it brings here. Having received a final judgment against it on the merits, plaintiff cannot bring those same claims here, in effect through a collateral attack on the district court judgment. *See generally Copelan v. Techtronics Indus. Co., Ltd.*, 95 F.Supp.3d 1230, 1240 (S.D. Cal. 2015) (holding that the issue of judicial estoppel should be considered under Rule 12(b)(6) because it is an affirmative defense and not an issue of jurisdiction).

In any event, even if plaintiff's suit was not barred by res judicata, its claims would either fall victim to this court's six-year statute of limitations or defendant's other basis to dismiss under Rule 12(b)(6). The only physical taking that plaintiff alleges involves the government's placement of locks on the gates at Mt. Solo.  The government began this practice in 2006, roughly eight years before plaintiff filed suit. Pl.'s Resp. Ex. 1 at ¶ 15.  All claims brought under the Tucker Act are subject to a six-year statute of limitations. 28 U.S.C. § 2501 (2012).  To be successful, therefore, plaintiff must have filed its claim within six years after it first accrued.  As a general matter, a claim accrues "when all the events have occurred that fix the alleged liability of the government and entitle the claimant to institute an action." *Ingrum v. United States*, 560 F.3d 1311, 1314 (Fed. Cir. 2009) (citing *Alliance of Descendants of Tex. Land Grants v. United States*, 37 F.3d 1478, 1481 (Fed. Cir. 1994)). Here, plaintiff's claim accrued when the government began putting locks on the gate in 2006. As a result, plaintiff's claim concerning a physical taking falls outside this court's six-year statute of limitations.

---

[4] We note that district courts have concurrent jurisdiction with this court for takings claims up to $10,000. *See* 28 U.S.C. § 1346 (a)(2) (2012).  In its district court action, plaintiff did not allege the value of the taking.

5

The claims originating in the notice of encroachment and the opposition to the plaintiff's bankruptcy plan are also defective. We agree with the government that BPA, as an adjoining landowner, was acting in its proprietary capacity to protect its own property interests. The notice of encroachment specifically states that "[a]ny activity *within the Easements* must stop and desist." Def.'s Ex. 5 (emphasis added). As to the bankruptcy opposition, that cannot be deemed a taking because BPA was exercising its rights as an interested party within its own proprietary concerns.[5] Finally, a dispute between two adjoining landowners as to their respective rights, when one of the parties is the United States, is a quiet title proceeding, over which the district courts have exclusive jurisdiction. *See* 28 U.S.C. § 1346(f). In sum, even if res judicata were not a bar, the action would have to be dismissed because there is no scenario in which plaintiff could be entitled to relief, or because some of the claims are jurisdictionally defective.

## CONCLUSION

For the reasons stated above, we grant defendant's motion to dismiss under RCFC 12(b)(6). The clerk's office is directed enter judgment accordingly. No costs.

s/Eric G. Bruggink
ERIC G. BRUGGINK
Senior Judge

---

[5] We note that neither the complaint nor any of plaintiff's briefing materials indicate what effect, if any, resulted from BPA's filings in bankruptcy court.